ENDISH and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*October 24—November 17, 1925.*

*Intoxicating liquor: Unlawful manufacture: Evidence: Sufficiency: Contrivances usable for manufacture of fermented but not distilled liquors: What possession is unlawful: Evidence: Judicial notice: Character of mash.*

1. Evidence that beer was found in a laundry which was in the possession and under the control of the defendant E., that malt, cooking utensils, and a stove still warm were also found therein, and that smoke was seen coming from the

chimney earlier in the day, is *held* sufficient to sustain a conviction of E. of the offense of manufacturing intoxicating liquor without a permit, but not to sustain a conviction of the defendant B., who was seen going into and leaving the laundry. p. 262.

2. A conviction under a count charging possession of contrivances to be used for the manufacture of alcoholic liquors, in violation of sub. (32) (d), sec. 165.01, Stats., is not sustained where there was no still or other contrivance which could be used for distillation found on defendant's premises, the statute prohibiting their use for the *distillation* of alcoholic liquors. p. 262.

3. A conviction on a count charging possession of ingredients in process of fermentation from which liquor is customarily made, in violation of sub. (32) (d), sec. 165.01, Stats., is not sustained where there was no proof that the mash found was mash from which distilled liquor was customarily made, as in the absence of proof this court cannot take judicial notice that the mash found was of the kind that is customarily used in making such liquor. p. 263.

4. Sub. (28), sec. 165.01, Stats., providing that possession of liquor is *prima facie* evidence of unlawful possession, does not create an offense, but is a mere statement of a rule of evidence intended to apply to distilled liquors. p. 265.

ERROR to review a judgment of the county court of Iowa county: ALDRO JENKS, Judge. *Modified and reversed.*

The plaintiffs in error, hereinafter referred to as the defendants, were convicted in the county court of Iowa county, before the court and a jury, on four counts, to wit: (1) manufacture of intoxicating liquors without a permit, contrary to sub. (3), sec. 165.01, Stats.; (2) unlawfully having in their possession and under their control without a permit privately manufactured distilled liquors, contrary to and in violation of sub. (32) (d), sec. 165.01, Stats.; (3) unlawfully having in their possession and under their control without a permit certain compounds and ingredients in process of fermentation from which liquors are customarily made, contrary to and in violation of sub. (32) (d), sec. 165.01, Stats.; and (4) unlawfully having in their possession and under their control without a permit, and other than in their private dwelling used exclusively as such, pri-

vately manufactured liquors containing alcohol in excess of one half of one per centum, in violation of sub. (28), sec. 165.01, Stats.

The defendants were sentenced on each count separately, and from such sentence they sued out a writ of error to this court.

*Morris Podell* of Milwaukee, for the plaintiffs in error.

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *N. S. Boardman,* district attorney of Iowa county, and oral argument by *Mr. Messerschmidt.*

CROWNHART, J. The facts are not in controversy. The defendant *Endish* was the owner of the United States Hotel at Mineral Point, and the real estate upon which it was situated, together with a stone building thereon, called the laundry or wash-house, situated about forty feet from the hotel. *Endish* was in possession of the property and ran the hotel. On the 4th of September, 1924, enforcement officers entered the premises with a search warrant, and discovered in the hotel wine and beer containing alcohol in excess of one half of one per cent. They also entered the laundry or wash-house, and found there similar intoxicating liquors. They also found in the laundry some warm mash, a copper boiler, a dipper, some malt, a small stove which was warm, and a couple of pieces of hose. No distilled liquors were found on the premises, and no still or other contrivance used or capable of being used for the distillation of alcoholic liquors was found. There was no evidence of the character of the mash, and nothing to indicate that it was mash from which distilled liquor is customarily made. On the morning of that day smoke was seen coming from the chimney of the laundry, and the defendant *Bauer* was seen going into the laundry, and again he was seen coming out of the laundry in the afternoon, shortly prior to the search. There is no other proof of any kind convicting

*Bauer* of the possession of intoxicating liquors or the manufacture thereof, or the possession of any contrivance for the manufacture of intoxicating liquors. There is no other proof that *Endish* manufactured intoxicating liquors or had in his possession any contrivance for the manufacture of intoxicating liquors. The question before us, then, is as to the sufficiency of the proof to sustain the verdict of the jury.

Were the defendants guilty of the manufacture of intoxicating liquors without a permit, contrary to sub. (3), sec. 165.01, Stats.? It is admitted that neither of the defendants had a permit to manufacture. *Endish* was in possession of a hotel and laundry and of the liquors found therein. There was sufficient competent evidence to warrant the jury in finding that the beer found on the premises was manufactured in the laundry. *Endish* being in possession and control of the premises upon which such liquor was being manufactured, the jury were privileged to find him guilty thereof under the first count.

As to the defendant *Bauer* there is no evidence whatever that he manufactured any liquor. The record is entirely barren as to his relation with *Endish* or as to his business in the wash-house, and the conviction as to him on this count must be reversed.

The second count, charging possession of contrivances used or capable of being used for the manufacture of alcoholic liquors contrary to and in violation of sub. (32) (d), sec. 165.01, Stats., significantly changes the language of the statute, "used or capable of being used for the *distillation* of alcoholic liquors," to "used or capable of being used for the *manufacture* of alcoholic liquors." As has been stated, there was no still or other contrivance used or capable of being used for the distillation of alcoholic liquors found on the premises, and the conviction of each defendant on this count must be reversed.

As to the third count, charging possession of compounds and ingredients in process of fermentation from which

liquor is customarily made, contrary to and in violation of sub. (32) (d), sec. 165.01, Stats., the information again significantly fails to use the language of the statute or the substance thereof. The statute says, "the possession of any mash from which distilled liquor is customarily made . . . is hereby prohibited." It says nothing about "compounds and ingredients in process of fermentation." There is no proof that the mash found was mash from which distilled liquor was customarily made. The mash was evidently used for the making of beer, and in the absence of proof this court cannot take judicial notice that the mash was of the kind that is customarily used in making distilled liquor. The inference is entirely to the contrary. The conviction on this count must be reversed as to both defendants.

The fourth count charges the possession of alcoholic liquors in violation of sub. (28), sec. 165.01, Stats. Sub. (28) reads as follows:

*"Unlawful possession; evidence.* The possession of liquor by any person without a permit, other than in his private dwelling used exclusively as such, shall be *prima facie* evidence of unlawful possession."

This section on its face is a rule of evidence. It must be borne in mind that prior to the statute it was legal to possess alcoholic liquors. Without a statute making possession an offense, it is still permissible under the state law. The statute does not in itself make possession of liquor unlawful. It does not create an offense. If we look to other provisions of the act we find that the main prohibition in the act is sub. (3), to wit:

*"Dealing in intoxicating liquor prohibited.* After this act becomes operative, the manufacture, sale or transportation of intoxicating liquors, as herein defined, within, the importation thereof into, or the exportation thereof from the state of Wisconsin, except as may be herein or hereafter provided, is hereby prohibited."

Sub. (32) (d), sec. 165.01, provides that "the possession

of any privately manufactured distilled liquors without such permit is hereby prohibited." These are the only two provisions of the statutes that deal directly with prohibition of liquors except in licensed places. We do not find that the mere possession of wine or beer is made an offense under the prohibition act. The specific enumeration of the offenses quoted, under the rule *Expressio unius est exclusio alterius,* leads to the conclusion that sub. (28), sec. 165.01, was intended to cover distilled liquors and not malt or vinous liquors. This conclusion is further fortified by the fact that *possession* was stricken out of the general prohibitory clause of the third subsection of the bill as introduced in the legislature.

Referring to the legislative records, we find that the bill as originally introduced into the legislature read as follows:

"*Dealing in intoxicating liquor prohibited.* After this chapter becomes operative, the manufacture *for sale,* sale, *possession for sale* or transportation of intoxicating liquors, the importation thereof into, or the exportation thereof from the state, except as provided herein, is prohibited."

The words "for sale" and "possession for sale" were stricken out of this section before passage of the bill.

The history of the legislation still further indicates the intent of the legislature. A bill known as the Matheson bill had passed the legislature prior to the enactment of the present prohibition law, and had been vetoed by the governor. In his veto the governor said:

"The evil effect of the present commercialized traffic in poisonous liquors may not be overstated. It must be sternly repressed. The temptation to make 'moonshine' for illicit sale is great, owing to the ease with which it can be made, and the great profit to be derived from the sale. . . .

"A good enforcement act will have the sympathetic assistance of the people. An espionage law which provides for spying on the home and the family life will become repulsive, and the reaction of the people will endanger the success of any enforcement act."

The present act, immediately following the veto of the Matheson bill, seemed to have attempted to prevent spying on the home and the family life, and to distinguish between strong, distilled liquors—"moonshine"—and the milder malt or fermented liquors that might be prepared in the home without the use of stills, and which should be intended for home consumption and not for commercial purposes.

By referring to the bill as originally drawn and introduced into the legislature, it is very evident how sub. (28) was intended to apply. The original bill contained a prohibition against possession for sale of intoxicating liquors, and sub. (28) made possession *prima facie* evidence of unlawful possession, *i.e.* possession for sale, thereby shifting the burden of proof to the possessor to show that his liquors were not possessed for sale. Sub. (28) was an excellent enforcement provision as applied to sub. (3) as originally introduced, but became useless and meaningless under the amendment. The legislature clearly overlooked this provision when it amended sub. (3). With this history of the act, there is no doubt that sub. (28) was not intended to create an offense, but was, as we have stated, a mere rule of evidence.

The court is therefore of the opinion that sub. (28), sec. 165.01, Stats., does not create an offense, but is merely a statement of a rule of evidence, which was intended to apply to distilled liquors.

In the brief of the attorney general it is freely conceded that there is no evidence in the case under which the defendants could be adjudged guilty of having contrivances in their possession, in violation of sub. (32) (d), sec. 165.01, Stats.

*By the Court.*—The judgment and sentence of the county court are reversed as to all counts as to the defendant *Bauer*, and as to all counts as to the defendant *Endish* except the first count. The judgment and sentence will be modified accordingly.